UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO and
MICHAEL GARRISON,

        Plaintiffs,        Case No. 08-11173

v.        District Judge Thomas L. Ludington

        Magistrate Judge R. Steven Whalen

MICHIGAN DEPT. OF CORRECTIONS,
ET. AL.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is a Motion for Temporary Restraining Order and Preliminary Injunction [Docket #18], filed by Plaintiffs Matthew Catanzaro and Michael Garrison, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be DENIED.

### I.   FACTS

On March 19, 2008, Plaintiffs filed their complaint pursuant to 42 U.S.C. § 1983. At that time, they were both prison inmates in the custody of the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility in Jackson, Michigan. They were both subsequently transferred, and at the time the present motion was filed, Mr. Catanzaro was at the Mid-Michigan Correctional Facility in St. Louis, Michigan, and Mr. Garrison was at the Deerfield Correctional Facility in Ionia, Michigan. Today, Mr. Catanzaro is still at the Mid-Michigan Correctional Facility, but Mr. Garrison has been transferred to the West Shoreline Correctional Facility in Muskegon Heights, Michigan.

The complaint names 22 Defendants, and challenges numerous conditions of

confinement alleged to violate the Eighth Amendment. Plaintiffs allege a lack of ventilation in prisoner living areas, that has resulted in outbreaks of infectious diseases, and has caused the Plaintiffs to suffer "severe breathing difficulties," *Complaint*, ¶¶ 4-5; inadequate staffing, which has resulted in assaults, thefts and other crimes against inmates, *id*, ¶ 6; inadequate lighting and hygiene facilities, *id*, ¶ 7; inadequate amounts of food and space in the dining area, *id*, ¶ 8; inadequate enforcement of prisoner security classification rules, resulting in violent and dangerous prisoners being housed with low-security prisoners, *id*, ¶ 9; lack of jobs, psychological counseling and adequate medical care, *id*, ¶¶ 10-11; inadequate space in the law library, *id*, ¶ 12; and no shower curtains in the housing units, *id*, ¶ 14.

In the present motion, the Plaintiffs refer to ¶¶ 3-14 of their complaint, and state that possible harms, in the form of exposure to contagious diseases, denial of adequate food and medical care, etc., are attributable to overcrowding. They request a temporary restraining order (TRO) and preliminary injunction "ordering the Defendant Michigan Department of Corrections to remove the Seventh and Eighth prisoner bunks from its minimum security level-1 prisons." *Motion*, p. 4.

## II.    STANDARD OF REVIEW

Generally, in determining whether to grant injunctive relief, a court must examine and weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d

453, 459 (6th Cir. 1997) (*en banc*). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573.

Notwithstanding this balancing approach, however, the likelihood of success and irreparable harm factors predominate. Thus, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiffs bear the burden of demonstrating their entitlement to a preliminary injunction, and their burden is a heavy one. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet , supra,* at 573. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Thus, plaintiffs may not merely point to genuine issues of material fact which exist, but must affirmatively demonstrate their entitlement to injunctive relief.

### III. DISCUSSION

#### A. Likelihood of Success

The Plaintiffs' motion for injunctive relief explicitly incorporates the allegations of ¶¶ 3-14 of the complaint. *See Motion*, ¶ 1. At the time the complaint was filed, both Plaintiffs were incarcerated at the Cooper Street Correctional Facility. They have since been transferred, with each Plaintiff being housed at a different institution. Indeed, Mr.

Garrison has again been transferred since this motion was filed. The point is that they have not shown that the conditions at *all* Level I (or Secure Level I) facilities are the same as they allege they were at Cooper Street. Again, the burden is on the Plaintiffs to affirmatively demonstrate their entitlement to the extraordinary remedy of injunctive relief. Even assuming the truth of their allegations regarding the conditions of confinement at Cooper Street, the Plaintiffs' transfer to other institutions renders their request for injunctive relief moot. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996) (holding prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility).

Moreover, while the Plaintiffs make generalized claims about overcrowded and unsanitary prison conditions, and assert that these conditions are likely to cause the spread of communicable diseases and assaults, they do not themselves establish that, as a result of allegedly unconstitutional prison conditions, they have been injured.[1]

Based on the information before the Court at this time, the Plaintiffs have not shown a likelihood of success on the merits.

### B.    Irreparable Harm

Again, the Plaintiffs' claim of harm is mooted by their transfer and, as noted above, they have not shown that they themselves are likely to suffer harm or injury as a result of the conditions they claim exist at all Level I facilities. Nor have they shown, beyond conjecture, that the relief they request–removing two prisoner bunks from each

---

[1] In an affidavit attached to the present motion, Mr. Catanzaro states that he was assaulted at the Mid-Michigan Correctional Facility. However, other than his subjective belief, he provides no basis to conclude that overcrowding and understaffing were the proximate causes of this assault.

The motion also contains affidavits from a number of inmates regarding conditions at the Deerfield Correctional Facility. Neither Plaintiff is currently housed there.

unit in every Level I institution–will address the possibility of harm they allege. Injunctive relief should not issue where the claimed irreparable damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

### C. Harm to Others and the Public Interest

These last two factors may be considered together. Plaintiffs are asking this Court to order the MDOC to make sweeping, Department-wide changes prior to any substantive resolution of this lawsuit, prior to discovery and the determination of pending dispositive motions, and based only on their unsubstantiated allegations.

In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern. *See also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill equipped." *Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir.2003). Thus, Departments of Corrections are accorded considerable latitude in the administration of state prisons. In *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 227, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court discussed the balancing of constitutional rights afforded prisoners against the deference that prison officials must be given in the efficient management of prisons: "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." *See also Fuller v. Burnett*, 2008 WL 793744, *8 (W.D.Mich. 2008), citing *Kendrick v. Bland,* 740 F.2d 432 at 438, n. 3, (6th Cir.1984) ("[W]here a prison inmate seeks an order enjoining state prison officials, this

Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting"). This Court is ill-equipped to unilaterally micro-manage prison administration in the manner that the Plaintiffs suggest. *Bruce v. Ylst, supra*.

There are currently six motions to dismiss or for summary judgment pending. Whether or not the Plaintiffs prevail on those motions, they have not met their much more substantial burden of showing entitlement to the broad injunctive relief they seek.

## IV.   CONCLUSION

For these reasons, I recommend that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained

within the objections.

                                                 s/R. Steven Whalen
                                                 R. STEVEN WHALEN
                                                 UNITED STATES MAGISTRATE JUDGE

Dated: April 30, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 30, 2009.

                                                 s/Susan Jefferson
                                               Case Manager