UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO

        Plaintiff,

v.

MICHIGAN DEPT. OF CORRECTIONS,
ET AL.,

        Defendants.

No. 08-11173

District Judge Thomas L. Ludington

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

On March 19, 2008, Plaintiffs Matthew Catanzaro and Michael Garrison filed a civil complaint pursuant to 42 U.S.C. § 1983. Plaintiffs originally filed their complaint jointly. The claims that pertain to both Plaintiffs jointly have been dismissed. Count IV of the complaint is brought only by Plaintiff Catanzaro. On November 19, 2009, the Court ordered the claims of the two Plaintiffs severed. Plaintiff Catanzaro's complaint retained Docket No. 08-11173, and Plaintiff Garrison's case was assigned Docket No. 09-14560.

Before the Court at this time is a Motion for Summary Judgment Regarding Count IV of Plaintiff's Complaint [Docket #86], filed by Defendants Bruce Curtis, Judy Cotton and James McHenry, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be GRANTED.

        **I.    FACTS**

In Count IV of his Complaint, Plaintiff Catanzaro alleges that Defendants Curtis, Cotton and McHenry "violated his First Amendment Rights by retaliating against him for

engaging in protected conduct." *Complaint*, Count IV, p. 28. He bases this claim on ¶¶ 28-30, 38-45, and 47-51 of the Complaint. *Id*. In those paragraphs, he alleges the following facts.

Plaintiff filed an administrative grievance on August 30, 2007. Defendant Cotton, an MDOC grievance coordinator, rejected this grievance because Plaintiff did not attempt to resolve his complaint informally. Plaintiff denies this. In any event, Cotton told Plaintiff to file a new step one grievance. Cotton also rejected subsequent grievances based on her finding that they were procedurally deficient. *Id*. ¶¶ 28-30.

Plaintiff alleges that on September 12, 2007, he wrote to Defendant Curtis, the Warden, in an attempt to resolve the issue, but "Curtis refused to respond or to take any remedial action even over the issues which he did have control." *Id*. ¶ 35.

On October 2, 2007, Plaintiff requested grievance appeal forms from Cotton. When he did not receive a reply, he filed a grievance against Cotton "for not processing his grievances." *Id*. ¶ 38. On October 5, 2007, Cotton placed Defendant on "modified grievance access." Plaintiff claims that MDOC correspondence between Cotton, Curtis (the Warden) and the Deputy Warden, which contained "inflammatory false information," was placed in his prison file. *Id*. ¶ 39. He alleges that in a memorandum requesting his placement on modified grievance access, Cotton stated that "Plaintiff filed 16 grievances in nearly a months time period and that none of them had any merit, including the 'unfounded allegation of assault by staff.'" *Id*. ¶ 43. Plaintiff concedes that he filed 15 grievances during this time period. *Id*. ¶ 44. He states that on November 16, 2007, he filed a grievance complaining that his pizza was not big enough (it "measured 3 inches long and 2.5 inches wide that was clearly not the 6 oz. stated on the prison menu"), but received no response from Defendant Cotton. *Id.* ¶ 46.

On November 15, 2007, Plaintiff "kited" Ms. Cotton, requesting to file a grievance on Defendant McHenry. He states that McHenry approached him, asked for his prison I.D. card, and commented that he heard about Plaintiff "writing all the grievances on our staff." *Id*. ¶ 47. McHenry allegedly said, "You write grievances, I write tickets." *Id*. ¶ 48. When Plaintiff told McHenry that he needed his I.D. to get pain medication for his back, McHenry said, "[Y]ou can go without your medication tonight." *Id*. ¶ 49.

Attached to Defendants' Motion as Exhibit A is the affidavit of Defendant Judy Cotton. She states that she rejected Plaintiff's grievances on August 27, 2007 and August 30, 2007 pursuant to MDOC Policy Directive ("PD") 03.02.130, because Plaintiff did not first attempt to resolve the issues with staff. (Attached to Cotton's affidavit are Plaintiff's grievances and the grievance responses that explain the reason for rejection). *Cotton Affidavit*, ¶¶ 3-4. Cotton rejected another grievance on September 10, 2007, again based on PD 03.02.130, because Plaintiff was grieving the rejection of a grievance. This procedure is improper under the PD; the correct procedure is to appeal to the next step, not to file a new grievance. *Id*. ¶ 7.

Cotton states that on October 1, 2007, she sent a memorandum to Deputy Warden James Rice, recommending that Plaintiff be placed on modified grievance access. She states:

> "At the time I wrote the memorandum recommending that Catanzaro be placed on modified grievance access, Catanzaro had filed between 15 to 16 grievances between August 29, 2007 and September 27, 2007. Of these grievances, not one of them had any merit. One included unfounded allegations against staff. In another, Catanzaro had written, 'Get me out of this town it makes me sick to my stomach to be here. Let me see what new ways you can come up with to retaliate against me.' Based on the number of grievances and Catanzaro's own statements made in the grievances, it appeared to me that Catanzaro was abusing the grievance process and using it to effectuate a transfer. I requested that Catanzaro be put on modified grievance access for 90 days." *Id*. ¶ 11.

On October 4, 2007, Warden Curtis concurred in this recommendation. Cotton states, "Catanzaro was still able to file valid grievances but was instructed to immediately cease filing frovolous, demeaning, or otherwise non-grievable issues." *Id*. ¶ 13.

While Cotton admits that she gave Plaintiff copies of the memoranda she had written regarding his placement on modified grievance access, she states that "[t]he only thing that was placed in his file was the letter from the Warden concurring in the decision to place Catanzaro on modified access." *Id*. ¶ 14. The grievances that Plaintiff submitted were not placed in his file, and the letter from the Warden did not reference any grievances or contain any language made in the grievances. Cotton states, "Catanzaro was not punished for using the grievance system. Catanzaro was placed on modified access to the grievance system to fetter (sic) our the frivolous and otherwise non-grievable grievances that he had been filing up to that date." *Id*. ¶ 15. Cotton denies telling Plaintiff that the Parole Board would see any of this material, and denies threatening him with losing parole. *Id* ¶ 16.

Finally, Cotton states, "Rejections made by me of Plaintiff Catanzaro's grievances were done according to policy and my decisions were reviewed and approved by my supervisor. I never retaliated against Plaintiff Catanzaro." *Id*. ¶ 24.

Attached to Defendant's Motion as Exhibit B-2 is the memorandum from Warden Curtis to Ms. Cotton, which was placed in Plaintiff's prison file. The memorandum states, in its entirety:

> "I have reviewed the attached documentation to Prisoner Cantanzaro, #313263, and am notifying you of my concurrence with the recommendation to place him on a Modified Grievance Status for ninety (90) calendar days.
>
> "In accordance with OP-03.02.130, you will need to notify Prisoner Cantanzaro to inform him of his Modified Grievance Status. Valid grievances may still be filed, but the filing of frivolous and/or demeaning

grievances must stop immediately."

In his response to the present motion, Plaintiff clarifies that his retaliation claim against Defendants Cotton and Curtis is not based on his being placed on modified grievance access, but rather on "their placing of adverse information in both of the Plaintiff's files to get...parole denied." *Plaintiff's Brief in Response* [Docket #107], p. 1. He further claims that by placing "documents referencing grievances" in his file, the Defendants violated PD 03.02.130. *Id.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v.*

*Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

In Count IV, Plaintiff Catanzaro alleges retaliation in violation of his First Amendment rights. In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. "Protected conduct" means "conduct protected by the Constitution or by statute." *Id.* at 386-87.

#### A. Defendants Cotton and Curtis

Plaintiff claims that Defendant Cotton, the grievance coordinator, and Defendant Curtis, the Warden, retaliated against him for filing grievances, by placing inaccurate and inflammatory information in his prison file in order to frustrate his chance for parole.

While it is true that "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials . . ." *Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000), this right is protected only if the grievance is not frivolous. *Id.* A prisoner does not have a constitutionally protected right to file frivolous grievances. *Pasley v. Conerly*, 345 Fed.Appx. 981, 985, 2009 WL 3079719, *2 (6th Cir. 2009). Plaintiff was placed on modified grievance access, and a notation to that effect was placed in his file, because he repeatedly submitted frivolous grievances. Indeed, Plaintiff does not directly challenge the decision to place him on modified grievance access, and concedes that he filed 15 grievances in about a month's time.[1] The Sixth Circuit's observations in *Davis v. Martin* 52 Fed.Appx. 717, 718, 2002 WL 31770329, *1 (6th Cir. 2002), are pertinent here:

> "In this case, the record showed that Davis had filed a large number of grievances, many of which were rejected as raising non-grievable issues, raising multiple issues, or being duplicative, in addition to some which were denied on the merits. Because of his excessive and meritless grievances, he was placed on modified grievance access, which entails seeking approval before a grievance may be filed. In order for the filing of grievances to constitute protected conduct which may not be retaliated against, Davis must not have violated prison regulations with his grievances. *Smith v. Campbell,* 250 F.3d 1032, 1036-37 (6th Cir.2001). In this case, Davis did violate prison regulations by his abuse of the grievance process."

Because Plaintiff has not shown he was engaged in protected conduct, he fails the first prong of *Thaddeus-X*.

As to the second prong of *Thaddeus-X,* Plaintiff wisely concedes that being placed on modified grievance access is not an adverse action for purposes of a retaliation claim. In *Wappler v. Brevard*, 2008 WL 4534034, *7 (W.D.Mich. 2008), the court noted:

> "The Sixth Circuit has repeatedly held that '[b]eing placed on modified [grievance] access status would not deter a person of ordinary firmness

---

[1] Defendants' Exhibit D [Doc. #86] shows that between April 5, 2007 and September 29, 2008, Plaintiff filed 48 grievances. Forty-six were denied, one was resolved, and one shows no disposition.

from pursuing non-frivolous grievances against prison officials, within the courts or the prison administrative system.' *Jackson v. Madery,* 158 Fed.Appx. 656, 660 (6th Cir., May 30, 2006); *see also, Walker v. Michigan Dep't of Corrections,* 128 Fed.Appx. 441, 446 ('an ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances'); *Moore v. Sergent,* 22 Fed.Appx. 472, 474 (Oct. 26, 2001) (because a prisoner on modified access is 'still free to file grievances ... he has not been subjected to retaliation'); *Kennedy v. Tallio,* 20 Fed.Appx. 469, 471 (6th Cir., Sept.26, 2001) (placement on modified grievance access does not constitute adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct)."

Rather, Plaintiff contends that Defendants Cotton and Curtis took an adverse action when they placed false and inflammatory memoranda in his file, referencing his grievances, in violation of the policy directive. Plaintiff is factually incorrect. As shown by Defendant Cotton's affidavit, while Plaintiff was shown about five pages of written exchanges between Cotton and Curtis, the only document placed in his prison file was Curtis' short memorandum, quoted above, indicating that Plaintiff was to be placed on modified grievance access for 90 days. It does not quote or summarize any of the Plaintiff's grievances or the other memoranda. Plaintiff has offered no evidence, other than his own conjecture, to rebut Cotton's sworn statement that nothing else was placed in his file.[2] Curtis' memorandum does nothing more than document his administrative decision to place the Plaintiff on modified grievance access. It is difficult to fathom how this would constitute an adverse action.

Moreover, because there is no relationship between Curtis' memorandum and the denial of parole, Plaintiff fails the third prong of *Thaddeus-X*. Defendants have submitted

---

[2] "Mere personal beliefs, conjecture and speculation are insufficient to support" a triable factual inference. *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Absent any factual support beyond "naked speculation, conjecture, hunches, hypothesizing, intuitions, innuendo, insupportable 'inferences,' empty theorizing, creative guesswork, and wishful thinking," *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004).

unrebutted evidence that neither Curtis' memorandum nor the fact that Plaintiff was on modified access had anything to do with the Parole Board's decision. Attached to Defendants' Reply Brief [Doc. #111] as Exhibit N is the Parole Board's Notice of Decision, dated May 4, 2009, denying parole because "[t]he Parole Board lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety." The Board cited numerous reasons for its decision, including Plaintiff's history of serving for a sexual offense, a criminal history that includes drugs or alcohol and sexually deviant behavior, receipt of prison misconducts, and a long history of polysubstance abuse. Notably, the Notice of Decision does not mention Plaintiff's filing of grievances or his placement on modified grievance access.

Because Plaintiff has failed to demonstrate a triable issue of material fact as to his retaliation claims against Cotton and Curtis, those Defendants are entitled to summary judgment.

### B. Defendant McHenry

Taking Plaintiff's accusations against Defendant McHenry as true, it would appear that McHenry verbally harassed the Plaintiff. According to Plaintiff, on November 15, 2007, McHenry took his prison ID, which Plaintiff needed to obtain his medication, and told him he could go without his medication that night, because Plaintiff had made a complaint against maintenance worker Joe Kleinhans. McHenry also allegedly told Plaintiff, "You write grievances, I write tickets."

In Count III of his Complaint, Plaintiff asserts a separate Eighth Amendment claim against Defendant Kleinhans, alleging that Kleinhans attempted to run him over with a motorized cart. In a previous Report and Recommendation filed on August 31, 2009 [Doc. #126], I recommended that summary judgment be denied to Defendant Kleinhans.

That Report was accepted by the district judge on November 19, 2009 [Doc. #140]. It cannot be said that Plaintiff's complaint or grievance against Kleinhans was frivolous. He had a First Amendment protected right to do so, and has therefore satisfied the first prong of *Thaddeus-X* with regard to Defendant McHenry.

However, Plaintiff stumbles on the second *Thaddeus-X* prong, because he has not shown that McHenry took any adverse action against him. By affidavit [Doc. #86, Exhibit E], McHenry states that he has no recollection of talking with Plaintiff on November 15, 2007, but affirmatively states that he did not issue a ticket against him on that date. Plaintiff has offered no evidence that he in fact received a ticket from McHenry. While writing a disciplinary ticket would be considered an adverse action, that simply did not occur.

Nor is there any evidence that Plaintiff was denied his medication on November 15, 2007. In fact, his medication records [Doc. #86, Exhibit F] shows that Plaintiff received his prescribed Elavil on November 15, 2007 and every other day that month.

Plaintiff has therefore not shown any concrete injuries resulting from McHenry's actions. *See Mattox v. City of Forest Park*, 183 F.3d 515, 523 (6th Cir. 1999)("Nowhere does [plaintiff] attempt to concretize her personal injury. Without anything more specific, we cannot say that this meets the constitutional threshold required for her claim of First Amendment retaliation to proceed"). Rather, his claims against McHenry are essentially based on what could be characterized as intemperate but minor threats and harassment. However, it is well-established that verbal harassment or threats are not actionable under §1983. *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *Davis v. Michigan Dept. of Corrections*, 746 F.Supp. 662, 667 (E.D. Mich. 1990); *Anderson v. Caruso*, 2007 WL 2121992 (E.D. Mich. 2007). Furthermore, verbal insults or harangues are not considered

"adverse actions" for purposes of a retaliation claim. *Id*.; *Carney v. Craven*, 40 Fed.Appx. 48, 50 (6th Cir. 2002).

Therefore, Defendant McHenry is entitled to summary judgment.

### C. Qualified Immunity–All Defendants

Because Plaintiff's constitutional rights were not violated, it follows that these Defendants are also entitled to qualified immunity. Under *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the threshold question is whether a constitutional violation occurred. If it did not, a state officer or agent acting in the course of his or her official duties is protected by qualified immunity. *See also Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).[3]

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment Regarding Count IV of Plaintiff's Complaint [Docket #86] be GRANTED, and that Count IV of the Complaint against Defendants Cotton, Curtis and McHenry be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

---

[3] More recently, the Supreme Court held that the two-step sequential analysis set forth in *Saucier* (first, determine whether there was a constitutional violation, and second, determine whether the constitutional right was clearly established) is no longer mandatory. *Pearson v. Callahan*, — U.S. — , 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *See also, Moldowan v. City of Warren* 578 F.3d 351, 375 (6th Cir. 2009). Nevertheless, *Pearson* observed that the *Saucier* protocol, while not required, remains useful in particular cases. In this case, it is sufficient to say that under the first prong of *Saucier*, Plaintiff has not shown a constitutional violation as to these Defendants.

*Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen<br>R. STEVEN WHALEN<br>UNITED STATES MAGISTRATE JUDGE

Dated: March 3, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 3, 2010.

s/Susan Jefferson<br>Case Manager