UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW CATANZARO,

           Plaintiff,

v.

MICHIGAN DEPT. OF CORRECTIONS,
et al.,

           Defendants.
_____/

No. 08-11173

District Judge Thomas L. Ludington
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Matthew Catanzaro, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. Before the Court are a Motion for Summary Judgment filed by Defendants David Smith and Joseph Kleinhans [Doc. #156], and Plaintiff's Cross-Motion for Summary Judgment [Doc. #164], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' motion [Doc. #156] be GRANTED IN PART AND DENIED IN PART. Specifically I recommend that Defendant Smith's motion be GRANTED only as to the retaliation claim in Count V, dismissing that claim with prejudice, but DENIED as to the Eighth Amendment claims against Defendant Kleinhans (Count III) and Defendant Smith (Count V).

I further recommend that Plaintiff's motion [Doc. #164] be DENIED.

### I.  FACTS

In his complaint, Plaintiff alleges that on August 29, 2007, Defendant Kleinhans, a maintenance worker, came within three inches of hitting him with a motorized cart. *Complaint*, ¶¶ 15-16. Plaintiff states that he "jumped to the side of the walk which caused extreme pain to his back just before he would of (sic) been hit." *Id.* ¶ 16. Catanzaro alleges that when he asked Kleinhans if he was going to hit him with the cart, Kleinhans answered, "Damn right you dumb motherfucker, get the fuck out of the way you stupid son-of-a-bitch." *Id.* ¶ 17. Catanzaro claims that he returned

to his unit in severe pain, and was later seen by medical personnel, specifically, Defendant (Nurse) Dickens, Defendant (Nurse) Russell and Defendant (Physician's Assistant) Daoust. *Id.* ¶¶ 18, 21-25.[1]

Catanzaro alleges that on September 21, 2007, Defendant Smith, a Corrections Officer, called his name over the unit intercom, telling him to report to the officer's station because "the feds were waiting up at the control center to talk to him." *Id.* ¶ 55. When Catanzaro asked Smith what he was talking about, Smith allegedly said, in the presence of approximately 10 other prisoners, "Get dressed in your prison blues cause the feds are waiting to talk to you up front." Catanzaro states that one of the other prisoners asked, "What do the feds talk to inmates about?", and another prisoner answered, "He's a rat." *Id.* ¶ 55. Catanzaro states that the next day, he overheard another prisoner saying that he "may be wearing a wire or be a snitch for the feds." *Id.* ¶ 59. Catanzaro alleges that he had to fight several prisoners "who thought he was a snitch for the FBI." *Id.* ¶ 60.

Defendant Kleinhans states by affidavit (*Defendants' Motion*, Exhibit A) that on August 29, 2007, he was in fact driving his "EZ-Go" cart as he returned from the D Unit of the Cooper Street Correctional Facility to the maintenance shop. *Kleinhans Affidavit*, ¶ 3. He states that he saw Plaintiff Catanzaro walking in the middle of the road, wearing head phones; Kleinhans sounded his horn, but Plaintiff, who appeared to be adjusting a radio or tape player, continued on down the center of the road. *Id.*, ¶ 4. Kleinhans sounded the horn a second time, and saw inmate Gordon waving his arms and calling to the Plaintiff. *Id.*, ¶ 5. Kleinhans states that he "slowed down the cart and crept toward prisoner Catanzaro." *Id.* ¶ 6. He says that Catanzaro asked if Kleinhans was going to run him over, to which Kleinhans replied, "If you would turn down your music you could hear someone coming up behind you." Kleinhans then continued on his way without incident. *Id.*, ¶ 7. Kleinhans denies that he was trying to hit the Plaintiff. *Id.*, ¶ 8.

Plaintiff has submitted affidavits with his cross-motion for summary judgment [Doc. #164].[2] In his own affidavit (*Plaintiff's Motion*, Exhibit 1), he recounts the events of August 29, 2007

---

[1] Defendants Dickens, Russell and Daoust have been dismissed.

[2] Giving a liberal construction to Plaintiff's *pro se* filings, I will also construe his cross-motion for summary judgment as a response to the Defendants' motion.

-2-

somewhat differently than Kleinhans. Plaintiff states that when inmate Gordon got his attention, he looked behind him, and "saw Joe Kleinhans in his motorized cart moving fast within about three inches of me." *Id.*, ¶ 2. He then jumped out of the way, fell, and injured himself. *Id.* Consistently with the allegations in his complaint, Plaintiff claims that when he asked Kleinhans whether he was going to hit him, Kleinhans yelled, "Damn right," called him obscene names and told him to "get the fuck out of the way." *Id.*, ¶ 4. Plaintiff claims that he suffered continuing back and leg pain. *Id.* ¶¶ 8-11. Medical staff gave him aspirin and ibuprofen. *Id.*, ¶ 10-11.

Richard Tyler, another inmate, also submitted an affidavit. *Plaintiff's Motion*, Exhibit 2. Tyler states that on September 26, 2007, Joe Kleinhans "came from behind me fast in his motorized cart, coming within six inches of hitting me." *Id.*, ¶ 2. According to Tyler, Kleinhans told him, "Get the fuck out of the way. I've been known to hit people."

Defendant Smith also filed an affidavit, *Defendants' Motion*, Exhibit B, regarding Plaintiff's allegation that Smith impliedly labelled him a "snitch." Smith states, "I did not state that 'feds' were waiting to talk to Catanzaro, nor do I recall there being ten inmates in the lobby at the area at the time or any inmate asking why 'feds' would want to talk to an inmate." *Id.*, ¶ 4. Smith further states, "If I was in the officer's station at the time I called Catanzaro to the station, as he alleges in Cplt ¶ 55, it would have been impossible for anybody to hear a conversation between me and Catanzaro." *Id.*, ¶ 5.

Consistent with the allegations in his complaint, Plaintiff states by affidavit (*Plaintiff's Motion, Doc. #164,* Exhibit 1) that on September 21, 2007, while he was in the shower, he heard Defendant Smith say on the intercom, "Inmate Catanzaro A-199 report to the Officer's Station, the feds are waiting to talk to you at the Control Center." *Id.*, ¶ 15. He states that Smith repeated the announcement a second time as he was getting dressed. *Id.*, ¶ 16. Plaintiff then went to the lobby area, where Smith was seated at the podium. Contrary to Smith's claims that it would have been impossible for anyone to hear a conversation between the Plaintiff and himself, the Plaintiff states that "there were at least 10 inmates standing in the lobby within 10 feet, and some within 3 feet of Smith. There were 2 tables in the lobby that seat four inmates each and they were full. Normally,

-3-

inmates that are not seated are ordered to move out of the lobby. That was not the case that time." *Id*., ¶ 17. According to Plaintiff, Smith stated loudly, "Get your state blues on, you need to report to the Control Center. The feds are waiting to talk to you." *Id.*, ¶ 18. Plaintiff states that he heard an inmate say, "He is a rat," and heard other inmates make similar comments. *Id*., ¶ 20. Smith eventually gave Plaintiff a pass to report to the "med line," to receive his medications. *Id*., ¶ 21.[3] When Plaintiff later asked Smith why he made the statements about the Feds, Smith replied that it was to make the Plaintiff get ready faster. *Id*., ¶ 22. Plaintiff goes on to describe assaults against him by other inmates who accused him of being a "bitch ass rat," a "fucking snitch," and other epithets. His injuries from these assaults included a bloody nose, a sore jaw, "and a cut and lump on my hand (*sic* head?) from having my head rammed into a bed rail." He was also punched in the head and face and kicked in the back, ribs, legs and arms. *Id*. ¶¶ 27-29. Plaintiff states that he did not report these incidents "because I feared additional inmate reprisals and the spreading of more rumors that I was a rat or snitch." *Id*., ¶ 30.

Regarding his retaliation claim, Plaintiff states that he told Smith that he created a dangerous environment for him, and asked Smith why he did that. Plaintiff claims that Smith replied, "You filed a grievance on my boss, Sgt. Ortiz, I'm going to teach you what happens when you file grievances." *Id*., ¶ 24.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement

---

[3] Which may raise a factual question as to whether Smith said, "the feds are waiting," or "your meds are waiting."

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III.   ANALYSIS

#### A.   Defendant Kleinhans

In Count III of his complaint, Plaintiff brings an Eighth and Fourteenth Amendment excessive force claim against Defendant Kleinhans. Claims of excessive force against convicted prisoners by prison guards are analyzed under the Eighth Amendment's cruel and unusual punishment clause. *Cornwell v. Dahlberg,* 963 F.2d 912, 915-916 (6th Cir.1992). In *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), the Supreme Court held that what is necessary to establish unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. 475 U.S. at p. 320. It concluded that "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21

*Whitley* arose out of a prison disturbance situation. In *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Court extended the rule to single-prisoner incidents. ("[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). *Id*. at 6.

To sustain an Eighth Amendment/Excessive Force claim, a prisoner must ordinarily show more than a *de minimis* injury. *Id*. at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999)(en banc). However, where force is maliciously or sadistically applied, no injury need be shown. In *Hudson*, the Court explained:

> "Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur' .... In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' *The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it .... When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated .... This is true whether or not significant injury is evident.*" *Hudson*, 503 U.S. at 7 (emphasis added).

In *Wilkins v. Gaddy*, __U.S.__, 130 S.Ct. 1175, 1177,__L.Ed.2d__(2010), the Supreme Court reiterated "*Hudson*'s directive to decide excessive force claims based on the nature of the force rather than the extent of the injury...." *See also Williams v. Curtin*,__F.3d__, 2011 WL 284494 (6th Cir., 1-31-11).

In moving for summary judgment, Defendant Kleinhans hangs his hat on the allegedly *de minimis* nature of the Plaintiff's injuries, pointing out that he did not actually hit the Plaintiff with his motorized cart. And while the Plaintiff alleges serious back pain as a result of falling down when he jumped out of the way of Kleinhans' cart, the medical evidence provided shows that he received rather conservative treatment, consisting of mild anti-inflammatories and analgesics. Nevertheless, as the Courts held in *Wilkins v. Gaddy* and *Williams v. Curtin*, the Defendant's argument regarding "*de minimis* injuries" misconstrues the "core judicial inquiry" mandated by *Hudson*, that is, whether, regardless of the extent of any injury, the alleged force was applied maliciously to cause harm. For Eighth Amendment purposes, when force is so applied, "contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 7.

Therefore, if in fact Kleinhans intentionally tried to hit or run over the Plaintiff with a motorized cart, he has liability under the Eighth Amendment, because there is no conceivably

legitimate penological justification for such an action. The critical issue in this summary judgment motion, then, is whether that actually happened, or more precisely, whether there is a question of material fact concerning Kleinhans' actions. The opposing affidavits of Kleinhans and Plaintiff tell two completely different stories. Kleinhans says that he slowed his cart and "crept" toward the Plaintiff. The Plaintiff says that Kleinhans was "moving fast within about three inches of me." Kleinhans says that after mildly reprimanding Plaintiff for having his headphones turned up too loud, he returned to the Maintenance Shop without incident. Plaintiff says that he injured himself when he was forced to jump out of the way, and that Kleinhans, unleashing a torrent of obscenities, admitted to trying to run him over. Another inmate has submitted an affidavit recounting a similar incident with Kleinhans.

Drawing all reasonable inferences in favor of the Plaintiff, there is an unresolved question of fact as to whether Kleinhans intentionally and unjustifiably tried to hit him, in violation of the Eighth Amendment. Therefore, summary judgment is inappropriate on Plaintiff's Eighth Amendment claim.

### B.    Defendant Smith

#### 1. Eighth Amendment

In Count V of his complaint, Plaintiff Catanzaro alleges violation of his Eighth Amendment protections based on Defendant Smith inferentially labeling him a "snitch," or police informant. *Complaint*, ¶¶ 55-60.

In *David v. Hill,* 401 F.Supp.2d 749 (S.D.Tex.2005), the court noted a long line of cases recognizing the dangers of a prison inmate being labeled a "snitch," and the resulting "threat to an inmate's health and safety in violation of the Eighth Amendment." *Id.,* at 756-57. The court suggested that "[b]ecause being labeled a snitch could place an inmate's life in danger, it follows that he would have a protected interest in not being labeled one." *See also Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir.2001) ("labeling an inmate a snitch satisfies the *Farmer* standard and constitutes deliberate indifference to the safety of that inmate"); *Comstock v. McCrary, supra*, 273

F.3d at 699 n.2 (6th Cir.2001) (acknowledging that "[b]eing labeled a 'snitch' was dreaded, because it could make the inmate a target for other prisoners' attacks").

On August 31, 2009, I issued a Report and Recommendation ("R&R"), recommending that Defendant Smith's motion to dismiss this claim under Fed.R.Civ.P. 12(b)(6) be denied. *See* Doc. #126. That R&R was accepted on November 19, 2009. *See* Doc. #140. The question now is not the *legal* viability of a Eighth Amendment claim based on being indirectly labelled a "snitch" or a "rat," but rather whether Plaintiff has met his burden of showing that there is a *factual* disagreement sufficient to defeat the motion for summary judgment and require submission to a jury. *Anderson v. Liberty Lobby, Inc.*, *supra*.[4]

As with the Eighth Amendment claim against Defendant Kleinhans, the Plaintiff and Defendant Smith present two diametrically opposed versions of what happened. Smith denies ever making a comment about "the feds." The Plaintiff says that Smith made that comment three times: twice over the intercom, and a third time in the lobby area. The Plaintiff also claims that Smith admitted to making the statement in order to make him to get ready more quickly. Smith states that if he had been in the officers' station, "it would have been impossible for anybody to hear a conversation between me and Catanzaro." The Plaintiff states that the conversation took place in a lobby area where numerous other inmates were present. He also states that other inmates made comments suggesting that "talking to the feds" was, to them, indicative of being a "rat," and that in fact, he was forced to fight other inmates who accused him of being a "snitch," in the crudest of terms.

---

[4] In his motion for summary judgment, at p.11, Smith argues that "there is no allegation that Defendant Smith called Plaintiff a snitch. All that is alleged is that Smith mentioned in the presence of other inmates that Smith said the 'feds' wanted to talk to him." However, this Defendant did not file objections to my previous R&R, and has therefore waived any argument that an Eighth Amendment claim based on being only *inferentially* labelled a "snitch" fails as a matter of law. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991). In addition, this Court's order adopting the R&R falls under the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983).

The Plaintiff has therefore shown an unresolved question of material fact sufficient to deny summary judgment and require submission of this claim to a jury.

**2. Retaliation**

The Plaintiff claims that Smith made the announcements about "the feds" in retaliation for Plaintiff having filed a grievance against another Corrections Officer, Sgt. Ortiz.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

Plaintiff filed a grievance against Sgt. Ortiz on August 27, 2007. *See Defendants' Motion,* Exhibit C. Defendant concedes that filing a grievance is protected conduct; therefore, Plaintiff has met the first prong of his retaliation claim.

As to the "adverse action" element, the Defendant cites an unpublished Sixth Circuit case, *Williams v. Gersbacker*, 9 F.3d 111 (Table), 1993 WL 430138 (6th Cir. 1993), for the proposition that "a one-time comment of being called a 'snitch' does not rise to an Eighth Amendment violation." *Defendant's Brief*, p.12. However, while *Williams* notes that "[a] pervasive risk of harm may not *ordinarily* be shown by pointing to a single incident or isolated incident" *Williams*, at *3 (emphasis added), Plaintiff Catanzaro has, as discussed above, shown an Eighth Amendment based question of fact as to not only a "pervasive risk" of harm, but actual harm, in the form of fights with and assaults by other inmates. In addition, *Williams* was based on the fact that the plaintiff in that case failed to notify prison officials of the problem in any manner. The Court stated, "He offered no proof that he filed a prison grievance against defendant or that he sought protective custody as a result of being a risk of assault." *Id.*, at *4. In the present case, while Plaintiff states that he "did not report those assaults to staff because I feared additional inmate reprisals," *Plaintiff's Affidavit*, ¶ 30, he in fact filed a grievance regarding Smith's conduct on September 23, 2007, two days after the alleged incident with Smith. *See* Plaintiff's Exhibit 6, Grievance Identifier JCS 07-09-00-875-17a.

-9-

Thus, *Williams* is factually distinguishable, and by virtue of showing an arguable Eighth Amendment violation, Plaintiff has met the second prong of his retaliation claim.

However, it is on the third element that Plaintiff's retaliation claim fails. He has failed to plausibly show a causal relationship between his filing a grievance against Sgt. Ortiz and Smith's alleged comments about "the feds." First, the grievance against Sgt. Ortiz was rejected at Step I because Plaintiff had not attempted to first resolve the matter verbally with Ortiz prior to filing the grievance, as required by Department of Corrections procedures. *See* Defendants' Exhibit C, Grievance Identifier JCS 07-08-787-28b. Therefore, as Defendant points out at p.13 of his brief, neither Ortiz nor Smith would have even known about the grievance. Smith states in his affidavit, *Defendants' Exhibit B,* ¶ *7*, that Catanzaro "did not tell me anything about any grievance or complaint he had with Sgt. Ortiz," but only that Catanzaro "said he felt I [created a dangerous environment] in retaliation for a grievance [he] wrote on Sgt. Ortiz." Moreover, Plaintiff's allegation in his affidavit to the effect that Smith admitted to retaliating against him because of the grievance is contradicted by Plaintiff's own grievance against Smith, *see* Plaintiff's Exhibit 6, where he states (1) that Smith told him he made the comment about the feds not for retaliatory purposes, but to make him get ready faster, and (2) that Plaintiff told Smith, "I *think* you did this as retaliation for my writing a Grievance on Sgt. Ortiz." (Emphasis added). This last statement is consistent with ¶ 7 of Smith's affidavit ("he said he felt I did so in retaliation for a grievance Catanzaro wrote on Sgt. Ortiz"), and reveals the purely speculative nature of Plaintiff's retaliation claim. Given Plaintiff's own statements, no rational trier of fact could find that there was a causal relationship between his writing a grievance against another Corrections Officer, and Smith making a statement. Therefore, summary judgment should be granted to Smith as to the retaliation claim in Count V.

### C.    Plaintiff's Motion for Summary Judgment

I have recommended denial of Defendants' motion for summary judgment as to the Eighth Amendment claims against Kleinhans and Smith because there are disputed questions of material fact. Both Kleinhans and Smith have submitted affidavits that completely refute the Plaintiff's factual allegations. Under these circumstances, Plaintiff is not himself entitled to summary

judgment. Moreover, I have recommended granting summary judgment to Defendant Smith on the First Amendment retaliation claim. Accordingly, Plaintiff's motion for summary judgment must be denied.

### IV.   CONCLUSION

For these reasons, I recommend that Defendants' motion for summary judgment [Doc. #156] be GRANTED IN PART AND DENIED IN PART. Specifically I recommend that Defendant Smith's motion be GRANTED only as to the retaliation claim in Count V, dismissing that claim with prejudice, but that Defendants' motion be DENIED as to the Eighth Amendment claims against Defendant Kleinhans (Count III) and Defendant Smith (Count V).

I further recommend that Plaintiff's motion for summary judgment [Doc. #164] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Date: February 10, 2011

-11-

**CERTIFICATE OF SERVICE**

      I hereby certify on February 10, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 10, 2011: **Matthew Cananzaro.**

                                    s/Michael E. Lang  
                                    Deputy Clerk to  
                                    Magistrate Judge R. Steven Whalen  
                                    (313) 234-5217